Filing # 68941481 E-Filed 03/07/2018 03:37:11 PM

IN THE CIRCUIT COURT OF THE
9th JUDICIAL CIRCUIT IN AND FOR
ORANGE COUNTY, FLORIDA

CASTLE KEY INDEMNITY COMPANY
as subrogee of EVELYN AND TIMOTHY BALDON

    Plaintiff,

v.

AIR VENT, INC.

 and

POWERMAX ELECTRIC CO., LTD.

    Defendants.
_____/

## COMPLAINT

Plaintiff, Castle Key Indemnity Company as subrogee of Evelyn and Timothy Baldon, by and through their undersigned attorney, aver as follows:

### PARTIES

1. Plaintiff, Castle Key Indemnity Company as subrogee of Evelyn and Timothy Baldon, is an Illinois company with a principal place of business located at 2775 Sanders Road, Northbrook, Illinois 60062 and, at all times relevant hereto, was authorized to issue policies of insurance in the State of Florida.

2. At all times relevant hereto, Castle Key's subrogors, Evelyn and Timothy Baldon ("the Baldons"), owned the real and personal property located at 805 Royalton Road, Orlando, FL 32825 ("the loss location").

3. At all times material hereto, Castle Key provided insurance coverage to the Baldons for the loss location and their property, pursuant to policy number 971518497.

4. Defendant, Air Vent, Inc. ("AVI"), is a Delaware corporation with a principal place of business located at 4117 Pinnacle Point Drive, Suite 400, Dallas, Texas 75211 and, at all times relevant hereto, was engaged in the business of, *inter alia*, designing, assembling, manufacturing, marketing, distributing and/or selling attic fans.

5. Defendant, Powermax Electric Co., Ltd. ("Powermax"), is a Chinese corporation with a principal place of business located at 1-4 Region South of Qibao Industries, Xinhui District, Jiangmen City, Guangdong Province, China, 529156 and, at all times relevant hereto, was engaged in the business of, *inter alia*, designing, manufacturing, distributing and/or selling fan motors.

## JURISDICTION & VENUE

6. Jurisdiction and venue are proper in the Orange County Circuit Court because: (1) Plaintiff is seeking damages in excess of $15,000, exclusive of interest, costs, and attorney's fees; (2) the causes of action accrued in Orange County; and/or (3) the damaged property is located in Orange County.

## FACTS

7. On or about June 16, 2017, a fire originated at an attic fan at the loss location ("the fire").

8. The attic fan where the fire originated was designed, assembled, manufactured, marketed, distributed and/or sold by AVI ("the attic fan").

9. The attic fan's motor was designed, manufactured, distributed and/or sold by Powermax ("the motor").

10. AVI purchased the motor from Powermax as a component part and incorporated it into the attic fan, which AVI marketed, distributed and/or sold as a completed product.

11. As a result of the fire, the Baldons sustained property damage and other expenses.

12. Pursuant to its policy of insurance with the Baldons, Castle Key indemnified its insureds in an amount in excess of $250,000 for damages and expenses sustained as a result of the fire.

13. By virtue of the aforementioned indemnity payments, as well as any future payment(s), and pursuant to the terms of Castle Key's insurance policy and the common law principles of equitable subrogation, Castle Key is subrogated, to the extent of all payments made, or that will be made, to/on behalf of the Baldons as a result of the fire.

## COUNT I - NEGLIGENCE
### Castle Key v. AVI

14. Plaintiff incorporates by reference the averments contained in the preceding paragraphs, as if fully set forth at length herein.

15. AVI owed a duty of care to the Baldons to exercise reasonable care in designing, assembling, manufacturing, marketing, distributing and/or selling the attic fan to ensure that it was safe for any foreseeable use.

16. AVI, by and through its agents, employees, servants, representatives and/or workers, acting in the course and scope of their employment, breached it duty of care to the Baldons through one or more of the following acts and/or omissions:

    a) designing, assembling, manufacturing, marketing, distributing and/or selling an attic fan that AVI knew or reasonably should have known created an unreasonable risk of harm;

    b) designing, assembling, manufacturing, marketing, distributing and/or selling a defective attic fan;

    c) designing, assembling, manufacturing, marketing, distributing and/or selling an attic fan that was unsafe for its reasonably foreseeable use;

    d) designing, assembling, manufacturing, marketing, distributing and/or selling an attic fan that posed a risk of fire;

  e) incorporating a defective component part into the attic fan;

  f) failing to discover defects in the design, manufacture and/or assembly of the attic fan and/or the motor;

  g) failing to remove the attic fan from the marketplace when AVI knew or should have known it posed a danger;

  h) failing to properly inspect and/or test the attic fan and/or the motor; and/or

  i) designing, assembling, manufacturing, marketing, distributing and/or selling an attic fan that was not reasonably fit, suitable or safe for its intended purpose.

17. As a direct and proximate result of AVI's negligence, the Baldons sustained damage to their property and incurred other expenses, for which Castle Key made payments to/on behalf of its insureds in an amount in excess of $250,000.

**WHEREFORE**, Plaintiff hereby demands judgment against AVI in an amount in excess of $250,000.00, plus pre-judgment interest, costs, and any other such relief this Court deems appropriate under the circumstances.

## COUNT II – STRICT LIABILITY
### Castle Key v. AVI

18. Plaintiff incorporates by reference the averments contained the preceding paragraphs, as if fully set forth at length herein.

19. AVI designed, assembled, manufactured, marketed, distributed and/or sold the attic fan in an unreasonably dangerous and/or defective condition.

20. The Baldons were there ultimate user of the attic fan and a member of the class whom AVI should have expected to use the attic fan.

21. The attic fan was expected to, and did, reach its users/consumers, the Baldons, without a substantial change in the condition in which it was designed, assembled, manufactured, marketed, distributed and/or sold by AVI.

22. The fire was caused by the acts/omissions of AVI, its agents, employees, servants, representatives and/or workers acting in the course and scope of their employment, through which AVI is strictly liable by reason of the following:

> a) designing, assembling, manufacturing, marketing, distributing and/or selling a defective attic fan;
>
> b) designing, assembling, manufacturing, marketing, distributing and/or selling a product that was unsafe for its intended use;
>
> c) designing, assembling, manufacturing, marketing, distributing and/or selling an attic fan that posed a risk of fire;
>
> d) failing to properly inspect and/or test the attic fan to discover it was unreasonably dangerous and/or defective;
>
> e) failing to discover defects in the attic fan and/or the motor;
>
> f) failing to remove the attic fan from the marketplace when AVI knew or should have known it was unreasonably dangerous and/or defective; and/or
>
> g) designing, assembling, manufacturing, marketing, distributing and/or selling a product that was not reasonably fit, suitable or safe for its intended purpose.

23. As a direct and proximate result of AVI's aforementioned acts/omissions, the Baldons sustained damage to their property and incurred other expenses, for which Castle Key made payments to/on behalf of its insureds in an amount in excess of $250,000.

**WHEREFORE**, Plaintiff hereby demands judgment against AVI in an amount in excess of $250,000.00, plus pre-judgment interest, costs, and any other such relief this Court deems appropriate under the circumstances.

## COUNT III – BREACH OF IMPLIED WARRANTIES
<u>Castle Key v. AVI</u>

24. Plaintiff incorporates by reference the averments contained in the preceding paragraphs, as if fully set forth at length herein.

25. Through designing, assembling, manufacturing, marketing, distributing and/or selling the attic fan, AVI knew or should have known that the attic fan would be used by consumers, such as the Baldons.

26. The Baldons had a right to rely upon, and in fact did rely upon, the superior skill and judgment of AVI in designing, assembling, manufacturing, marketing, distributing and/or selling the attic fan.

27. Pursuant to Fla. Stat § 672.314, AVI impliedly warranted that the attic fan was merchantable.

28. Pursuant to Fla. Stat § 672.315, AVI impliedly warranted that the attic fan was fit for its particular purpose.

29. AVI, by and through its agents, employees, servants, representatives and/or workers, acting in the course and scope of their employment, breached its (i.) implied warranty or merchantability and/or (ii.) implied warranty of fitness for a particular purpose to the Baldons through one or more of the following acts and/or omissions:

   a) designing, assembling, manufacturing, marketing, distributing and/or selling a defective attic fan;

   b) designing, assembling, manufacturing, marketing, distributing and/or selling a product that was unsafe for its intended use;

   c) designing, assembling, manufacturing, marketing, distributing and/or selling an attic fan that posed a risk of fire;

   d) failing to properly inspect and/or test the attic fan to discover it was unreasonably dangerous and/or defective;

e) failing to discover defects in the attic fan and/or the motor;

f) failing to remove the attic fan from the marketplace when AVI knew or should have known it was unreasonably dangerous and/or defective; and/or

g) designing, assembling, manufacturing, marketing, distributing and/or selling a product that was not reasonably fit, suitable or safe for its intended purpose.

30. As a direct and proximate result of AVI's breach of implied warranty(ies), the Baldons sustained damage to their property and incurred other expenses, for which Castle Key made payments to/on behalf of its insureds in an amount in excess of $250,000.

**WHEREFORE,** Plaintiff hereby demands judgment against AVI in an amount in excess of $250,000.00, plus pre-judgment interest, costs, and any other such relief this Court deems appropriate under the circumstances.

### COUNT IV - NEGLIGENCE
### Castle Key v. Powermax

31. Plaintiff incorporates by reference the averments contained in the preceding paragraphs, as if fully set forth at length herein.

32. Powermax owed a duty of care to the Baldons to exercise reasonable care in designing, manufacturing, distributing and/or selling the motor to ensure that it was safe for its foreseeable use.

33. Powermax, by and through its agents, employees, servants, representatives and/or workers, acting in the course and scope of their employment, breached its duty of care to the Baldons through one or more of the following acts and/or omissions:

j) designing, manufacturing, distributing and/or selling a motor that Powermax knew or reasonably should have known created an unreasonable risk of harm;

k) designing, manufacturing, distributing and/or selling a defective motor;

l) designing, manufacturing, distributing and/or selling a motor that was unsafe for its reasonably foreseeable use;

m) designing, manufacturing, distributing and/or selling a motor that posed a risk of fire;

n) failing to discover defects in the designing and/or manufacturing of the motor;

o) failing to remove the motor from the marketplace when Powermax knew or should have known it posed a danger;

p) failing to properly inspect and/or test the motor; and/or

q) designing, manufacturing, distributing and/or selling a motor that was not reasonably fit, suitable or safe for its intended purpose.

34. As a direct and proximate result of Powermax's negligence, the Baldons sustained damage to their property and incurred other expenses, for which Castle Key made payments to/on behalf of its insureds in an amount in excess of $250,000.

**WHEREFORE,** Plaintiff hereby demands judgment against Powermax in an amount in excess of $250,000.00, plus pre-judgment interest, costs, and any other such relief this Court deems appropriate under the circumstances.

## COUNT V – STRICT LIABILITY
### Castle Key v. Powermax

35. Plaintiff incorporates by reference the averments contained the preceding paragraphs, as if fully set forth at length herein.

36. Powermax designed, manufactured, distributed and/or sold the motor in an unreasonably dangerous and/or defective condition.

37. The Baldons were there ultimate user of the motor and a member of the class whom Powermax should have expected to use the motor.

38. The motor was expected to, and did, reach its user/consumer, the Baldons, without a substantial change in the condition in which it was designed, manufactured, distributed and/or sold by Powermax.

39. The fire was caused by the acts/omissions of Powermax, its agents, employees, servants, representatives and/or workers acting in the course and scope of their employment, through which Powermax is strictly liable by reason of the following:

- h) designing, manufacturing, distributing and/or selling a defective motor;
- i) designing, manufacturing, distributing and/or selling a product that was unsafe for its intended use;
- j) designing, manufacturing, distributing and/or selling a motor that posed a risk of fire;
- k) failing to properly inspect and/or test the motor to discover it was unreasonably dangerous and/or defective;
- l) failing to discover defects in the motor;
- m) failing to remove the motor from the marketplace when Powermax knew or should have known it was unreasonably dangerous and/or defective; and/or
- n) designing, manufacturing, distributing and/or selling a product that was not reasonably fit, suitable or safe for its intended purpose.

40. As a direct and proximate result of Powermax's aforementioned acts/omissions, the Baldons sustained damage to their property and incurred other expenses, for which Castle Key made payments to/on behalf of its insureds in an amount in excess of $250,000.

**WHEREFORE,** Plaintiff hereby demands judgment against Powermax in an amount in excess of $250,000.00, plus pre-judgment interest, costs, and any other such relief this Court deems appropriate under the circumstances.

## COUNT VI – BREACH OF IMPLIED WARRANTIES
### Castle Key v. Powermax

41. Plaintiff incorporates by reference the averments contained in the preceding paragraphs, as if fully set forth at length herein.

42. Through designing, manufacturing, distributing and/or selling the motor, Powermax knew or should have known that the motor would be used by consumers, such as the Baldons, and/or incorporated into products used by consumers, such as the Baldons.

43. The Baldons had a right to rely upon, and in fact did rely upon, the superior skill and judgment of Powermax in designing, manufacturing, distributing and/or selling the motor.

44. Pursuant to Fla. Stat § 672.314, Powermax impliedly warranted that the attic fan was merchantable.

45. Pursuant to Fla. Stat § 672.315, Powermax impliedly warranted that the attic fan was fit for its particular purpose.

46. Powermax, by and through its agents, employees, servants, representatives and/or workers, acting in the course and scope of their employment, breach its (i.) implied warranty or merchantability and/or (ii.) implied warranty of fitness for a particular purpose to the Baldons through one or more of the following acts and/or omissions:

   h) designing, manufacturing, distributing and/or selling a defective motor;

   i) designing, manufacturing, distributing and/or selling a product that was unsafe for its intended use;

   j) designing, manufacturing, distributing and/or selling a motor that posed a risk of fire;

   k) failing to properly inspect and/or test the attic fan to discover it was unreasonably dangerous and/or defective;

   l) failing to discover defects in the attic fan and/or the motor;

m) failing to remove the attic fan from the marketplace when AVI knew or should have known it was unreasonably dangerous and/or defective; and/or

n) designing, assembling, manufacturing, marketing, distributing and/or selling a product that was not reasonably fit, suitable or safe for its intended purpose.

47. As a direct and proximate result of Powermax's breach of implied warranty(ies), the Baldons sustained damage to their property and incurred other expenses, for which Castle Key made payments to/on behalf of its insureds in an amount in excess of $250,000.

**WHEREFORE**, Plaintiff hereby demands judgment against Powermax in an amount in excess of $250,000.00, plus pre-judgment interest, costs, and any other such relief this Court deems appropriate under the circumstances.

### JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Nicholas J. Mari, Esq.
Florida Bar No. 123877
O'CONNOR & O'CONNOR, LLC
800 North Magnolia Avenue, Suite 1350
Orlando, FL 32803
P: (407) 843-2100
F: (407) 843-2061
NMari@onconlaw.com
*Attorneys for Plaintiff*